UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

HEIDI L. ANDERSON,

      Plaintiff,

      v.

MICHAEL J. ASTRUE, Commissioner
of the Social Security Administration,

      Defendant.

Case No. 09-cv-0639-TSZ-JPD

REPORT AND RECOMMENDATION

## I.      INTRODUCTION AND SUMMARY CONCLUSION

Plaintiff appeals the final decision of the Commissioner of the Social Security Administration ("Commissioner") which denied her application for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-83f, after a hearing before an administrative law judge ("ALJ"). For the reasons set forth below, the Court recommends that the Commissioner's decision be REVERSED and REMANDED for further proceedings.

## II.      FACTS AND PROCEDURAL HISTORY

Plaintiff is a 25-year-old woman with a high school education. Administrative Record ("AR") at 77, 163. Her past work experience includes employment as a fast food cashier, bell

ringer for the Salvation Army, sales clerk, union painter trainee and camp counselor. AR at 157-58, 236, 412, 418, 428, 429-30, 434. Plaintiff has worked part-time intermittently during the relevant period, but has never been gainfully employed. AR at 76.

Plaintiff asserts that she is disabled due to attention deficit hyperactivity disorder (ADHD), anxiety disorder, possible borderline personality disorder, depression and learning disorder. AR at 157, 196, 406. Plaintiff asserts a disability onset date of ████, 2002, which is the date that she turned 18 years old.[1] AR at 404.

Plaintiff filed an application for SSI on September 26, 2003. AR at 35. The Commissioner denied Plaintiff's claim initially and on reconsideration. AR at 71, 67. Plaintiff requested a hearing, which took place on April 18, 2007. AR at 400. On August 16, 2007, the ALJ issued a decision finding Plaintiff not disabled and denied benefits based on her finding that Plaintiff could perform a specific job existing in significant numbers in the national economy. AR at 35-42.

On September 24, 2008, after reviewing additional evidence, the Appeals Council denied Plaintiff's request for review, AR at 23-26, making the ALJ's ruling the "final decision" of the Commissioner as that term is defined by 42 U.S.C. § 405(g). On May 8, 2009, Plaintiff timely filed the present action challenging the Commissioner's decision. Dkt. No. 3.

### III.     JURISDICTION

Jurisdiction to review the Commissioner's decision exists pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3).

### IV.     STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), this Court may set aside the Commissioner's denial of social security benefits when the ALJ's findings are based on legal error or not supported by substantial evidence in the record as a whole. *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 (9th

---

[1]     Plaintiff's date of birth is redacted in accordance with Western District of Washington Local Rule CR 5.2.

REPORT AND RECOMMENDATION
PAGE - 2

Cir. 2005). "Substantial evidence" is more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 201 (1971); *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989). The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving any other ambiguities that might exist. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). While the Court is required to examine the record as a whole, it may neither reweigh the evidence nor substitute its judgment for that of the Commissioner. *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002). When the evidence is susceptible to more than one rational interpretation, it is the Commissioner's conclusion that must be upheld. *Id.*

The Court may direct an award of benefits where "the record has been fully developed and further administrative proceedings would serve no useful purpose." *McCartey v. Massanari*, 298 F.3d 1072, 1076 (9th Cir. 2002) (citing *Smolen v. Chater*, 80 F.3d 1273, 1292 (9th Cir. 1996)). The Court may find that this occurs when:

> (1) the ALJ has failed to provide legally sufficient reasons for rejecting the claimant's evidence; (2) there are no outstanding issues that must be resolved before a determination of disability can be made; and (3) it is clear from the record that the ALJ would be required to find the claimant disabled if he considered the claimant's evidence.

*Id.* at 1076-77; *see also Harman v. Apfel*, 211 F.3d 1172, 1178 (9th Cir. 2000) (noting that erroneously rejected evidence may be credited when all three elements are met).

## V.    EVALUATING DISABILITY

As the claimant, Plaintiff bears the burden of proving that she is disabled within the meaning of the Social Security Act (the "Act"). *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999). The Act defines disability as the "inability to engage in any substantial gainful activity" due to a physical or mental impairment which has lasted, or is expected to last, for a continuous period of not less than twelve months. 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).

A claimant is disabled under the Act only if her impairments are of such severity that she is unable to do her previous work, and cannot, considering her age, education, and work experience, engage in any other substantial gainful activity existing in the national economy. 42 U.S.C. §§ 423(d)(2)(A); *see also Tackett v. Apfel*, 180 F.3d 1094, 1098-99 (9th Cir. 1999).

The Commissioner has established a five step sequential evaluation process for determining whether a claimant is disabled within the meaning of the Act. *See* 20 C.F.R. §§ 404.1520, 416.920. The claimant bears the burden of proof during steps one through four. At step five, the burden shifts to the Commissioner. *Id*. If a claimant is found to be disabled at any step in the sequence, the inquiry ends without the need to consider subsequent steps. Step one asks whether the claimant is presently engaged in "substantial gainful activity." 20 C.F.R. §§ 404.1520(b), 416.920(b).[2] If she is, disability benefits are denied. If she is not, the Commissioner proceeds to step two. At step two, the claimant must establish that she has one or more medically severe impairments, or combination of impairments, that limit her physical or mental ability to do basic work activities. If the claimant does not have such impairments, she is not disabled. 20 C.F.R. §§ 404.1520(c), 416.920(c). If the claimant does have a severe impairment, the Commissioner moves to step three to determine whether the impairment meets or equals any of the listed impairments described in the regulations. 20 C.F.R. §§ 404.1520(d), 416.920(d). A claimant whose impairment meets or equals one of the listings for the required twelve-month duration requirement is disabled. *Id*.

When the claimant's impairment neither meets nor equals one of the impairments listed in the regulations, the Commissioner must proceed to step four and evaluate the claimant's residual functional capacity ("RFC"). 20 C.F.R. §§ 404.1520(e), 416.920(e). Here, the Commissioner evaluates the physical and mental demands of the claimant's past relevant work to determine whether she can still perform that work. 20 C.F.R. §§ 404.1520(f), 416.920(f). If

---

[2] Substantial gainful activity is work activity that is both substantial, *i.e.*, involves significant physical and/or mental activities, and gainful, *i.e.*, performed for profit. 20 C.F.R. § 404.1572.

the claimant is able to perform her past relevant work, she is not disabled; if the opposite is true, then the burden shifts to the Commissioner at step five to show that the claimant can perform other work that exists in significant numbers in the national economy, taking into consideration the claimant's RFC, age, education, and work experience. 20 C.F.R. §§ 404.1520(g), 416.920(g); *Tackett*, 180 F.3d at 1099, 1100. If the Commissioner finds the claimant is unable to perform other work, then the claimant is found disabled and benefits may be awarded.

## VI.    DECISION BELOW

On August 16, 2007, the ALJ issued a decision finding the following:

1.    The claimant has engaged in substantial gainful activity since September 26, 2003, the application date.

2.    The claimant has the following severe impairments: a bipolar disorder, attention deficit hyperactivity disorder (ADHD); and a substance abuse disorder.

3.    The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.

4.    After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform a full range of work at all exertional levels but with the following non-exertional limitations: she can perform simple, repetitive tasks that involve public contact 30% of the time, or less.

5.    The claimant is unable to perform any past relevant work.

6.    The claimant was born on ████, 1984 and she was 19 years old on the date the application was filed, which is defined as a younger individual age 18-49.

7.    The claimant has at least a high school education and is able to communicate in English.

8.    Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not

REPORT AND RECOMMENDATION
PAGE - 5

the claimant has transferable job skills. (See SSR 82-41 and 20 CFR part 404, Subpart P, Appendix 2).

9. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform.

10. The claimant has not been under a disability, as defined in the Social Security Act, since September 26, 2003, the date the application was protectively filed.

AR at 37-42.

## VII.   ISSUES ON APPEAL

The principal issues on appeal are:

1. Whether the ALJ erred by failing to consider the opinion of examining psychiatrist Sang H. Suh, M.D.

2. Whether the ALJ erred by not including learning disorder as a severe impairment.

3. Whether the ALJ erred by failing to develop the record concerning the diagnosis of a learning disorder.

4. Whether the ALJ erred by failing to pose a complete hypothetical to the vocational expert.

5. Whether the ALJ erred in assessing Plaintiff not fully credible concerning her functional limitations.

6. Whether the ALJ erred by not asking the vocational expert if his testimony was consistent with the Dictionary of Occupational Titles.

Dkt. Nos. 14, 16.

## VIII.   DISCUSSION

A.   <u>The ALJ Erred by Failing to Consider the Opinion of Dr. Suh</u>.

   *1.   Standard of Review for Medical Evidence*

As a matter of law, more weight is given to a treating physician's opinion than to that of a non-treating physician because a treating physician "is employed to cure and has a greater opportunity to know and observe the patient as an individual." *Magallanes v. Bowen*, 881 F.2d

747, 751 (9th Cir. 1989); *see also Orn v. Astrue*, 495 F.3d 625, 631 (9th Cir. 2007). A treating physician's opinion, however, is not necessarily conclusive as to either a physical condition or the ultimate issue of disability, and can be rejected, whether or not that opinion is contradicted. *Magallanes*, 881 F.2d at 751. If an ALJ rejects the opinion of a treating or examining physician, the ALJ must give clear and convincing reasons for doing so if the opinion is not contradicted by other evidence, and specific and legitimate reasons if it is. *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1988). "This can be done by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Id.* (citing *Magallanes*, 881 F.2d at 751). The ALJ must do more than merely state his conclusions. "He must set forth his own interpretations and explain why they, rather than the doctors', are correct." *Id.* (citing *Embrey v. Bowen*, 849 F.2d 418, 421-22 (9th Cir. 1988)). Such conclusions must at all times be supported by substantial evidence. *Reddick*, 157 F.3d at 725.

The opinions of examining physicians are to be given more weight than non-examining physicians. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996). Like treating physicians, the uncontradicted opinions of examining physicians may not be rejected without clear and convincing evidence. *Id.* An ALJ may reject the controverted opinions of an examining physician only by providing specific and legitimate reasons that are supported by the record. *Bayliss v. Barnhart,* 427 F.3d 1211, 1216 (9th Cir. 2005).

Opinions from non-examining medical sources are to be given less weight than treating or examining doctors. *Lester*, 81 F.3d at 831. However, an ALJ must always evaluate the opinions from such sources and may not simply ignore them. In other words, an ALJ must evaluate the opinion of a non-examining source and explain the weight given to it. Social Security Ruling ("SSR") 96-6p, 1996 WL 374180, at *2. Although an ALJ generally gives more weight to an examining doctor's opinion than to a non-examining doctor's opinion, a non-examining doctor's opinion may nonetheless constitute substantial evidence if it is

consistent with other independent evidence in the record. *Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002); *Orn*, 495 F.3d at 632-33.

### 2. The ALJ's Treatment of Opinion of Dr. Suh

Sang H. Suh, M.D., conducted a psychological evaluation of Plaintiff on August 30, 2002. AR at 346-48. Dr. Suh also interviewed Plaintiff's mother. *Id.* He prepared a written report, in which he diagnosed Plaintiff with mood disorder not otherwise specified, rule out bipolar II, anxiety disorder not otherwise specified, and learning disorder not otherwise specified. AR at 348. He gave Plaintiff a Global Assessment of Functioning ("GAF") score of 50.[3] *Id.* In addition, Dr. Suh opined that "her ADHD will interfere significantly with her ability to focus, concentrate and be appropriate in a work related setting," and that her "psychiatric difficulties are significant enough to interfere with her work-related capacity to a marked degree." *Id.*

The ALJ did not discuss or otherwise consider Dr. Suh's opinion; in fact, the ALJ only cited Dr. Suh's report as an exhibit at the end of a sentence discussing generally Plaintiff's history of medical treatment. AR at 39. Defendant asserts that the ALJ properly did not consider Dr. Suh's opinion because it was dated prior to an October 31, 2002 determination that Plaintiff was not disabled.[4] Defendant contends that the ALJ was therefore not required to consider a medical opinion connected to a previous period in which Plaintiff was determined not to be disabled, and that any such opinion has limited probative value.

---

[3]   The GAF score is a subjective determination based on a scale of 1 to 100 of "the clinician's judgment of the individual's overall level of functioning." AMERICAN PSYCHIATRIC ASS'N, DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS 32-34 (4th ed. 2000). A GAF score of 51-60 indicates "moderate symptoms," such as a flat affect or occasional panic attacks, or "moderate difficulty in social or occupational functioning." *Id.* at 34. A GAF score of 41-50 indicates "[s]erious symptoms," such as suicidal ideation or severe obsessional rituals, or "any serious impairment in social, occupational, or school functioning," such as the lack of friends and/or the inability to keep a job. *Id.*

[4]   Plaintiff filed an earlier Title XVI application which was denied. Rather than pursue the claim further, Plaintiff filed the Title XVI application at issue in this matter a year later.

REPORT AND RECOMMENDATION
PAGE - 8

It was error for the ALJ to fail to consider Dr. Suh's opinion. First, while Dr. Suh's opinion is dated two months prior to the October 31, 2002 determination, there is no indication in the record that Dr. Suh's opinion is not an accurate and pertinent assessment of Plaintiff's impairments as of November 1, 2002, the first day of the time period considered by the ALJ in this matter. It is not as if Dr. Suh's opinion all of a sudden lost all probative value at midnight on October 31, 2002, by virtue of the prior adverse disability determination. Absent evidence to the contrary, Dr. Suh's opinion was still relevant and probative of Plaintiff's impairments as of November 1, 2002 and thereafter, and should have been considered by the ALJ.

Second, the ALJ considered other evidence that was dated prior to October 31, 2002. For example, the ALJ relied upon school records from 1998 and a psychiatric evaluation from 1999. AR at 39-40, 41. These records are quite older than the opinion of Dr. Suh, yet the ALJ relied upon those records to counter other medical opinions and testimony and disregarded Dr. Suh's opinion. Absent any adequate explanation, it was error for the ALJ to arbitrarily select which older records to consider and which to disregard. On remand, the ALJ is directed to properly evaluate the opinion of Dr. Suh in accordance with the hierarchy of medical evidence.

        B.    <u>The ALJ May Have Erred by Not Including Learning Disorder as a Severe Impairment</u>.

As Plaintiff points out, nearly all the relevant medical opinions in the record either diagnose Plaintiff with a learning disorder or state that she may have a learning disorder. Examining psychiatrist Dr. Suh diagnosed Plaintiff with a learning disorder not otherwise specified. AR at 348. Examining psychologist Allan Fitz, Ph.D., also diagnosed Plaintiff with a learning disorder not otherwise specified, and stated that "additional academic testing would be needed to fully assess this area." AR at 395. Examining psychologist Nahid Markosian, Ph.D., noted "significant differences between her visual and verbal abilities," and stated that "this may reflect a language based learning disorder . . . ." AR at 371. Non-examining psychologist Janis Lewis, Ph.D., determined that Plaintiff had a learning disorder not otherwise

REPORT AND RECOMMENDATION
PAGE - 9

specified, and non-examining psychologist William Lysack, Ph.D., affirmed this conclusion. AR at 350, 365.

Notwithstanding the near unanimity regarding the existence or possibility of a learning disorder, the ALJ did not include learning disorder as a severe impairment, nor did she seek to develop the record further regarding the issue. The ALJ stated that a learning disorder is "not supported by earlier school testing," AR at 39, 40, but the school records relied upon by the ALJ precede the disability onset date and do not specify whether Plaintiff was even tested for a learning disorder. Moreover, the school records reveal that, at a minimum, Plaintiff needed special education services, which could be indicative of a learning disorder. *See* AR at 203-07, 208-17; *see also* AR at 394 ("While current testing was not done to assess a learning disability, her past IQ testing with Dr. Markosian and history of special education suggests the possibility of this diagnosis."). Accordingly, to the extent the ALJ rejected the several medical opinions finding that Plaintiff had or potentially had a learning disorder, she failed to provide clear and convincing reasons for doing so. On remand, the ALJ is directed to reevaluate the medical evidence in accordance with the hierarchy of medical evidence to determine whether a learning disorder should be included as a severe impairment, and whether a learning disorder would contribute additional functional limitations. The ALJ is directed to develop the record further if necessary, including obtaining further evaluation of Plaintiff or expert medical testimony.

> C.   On Remand, the ALJ Will Call for New Vocational Expert Testimony.

After a claimant has demonstrated that she has a severe impairment that prevents her from doing her past relevant work, she has made a prima facie showing of disability. *Tackett v. Apfel*, 180 F.3d 1094, 1100 (9th Cir. 1999). The burden then shifts to the Commissioner at step five to demonstrate that, in light of the claimant's RFC, age, education, and work experience, she can perform other types of work that exist in "significant numbers" in the national economy. *Id.*; 20 C.F.R. § 404.1520(g). To meet this burden, the ALJ may call for testimony from a vocational expert ("VE") or, in some cases, by reference to the Medical-

Vocational Guidelines. If an ALJ calls for testimony from a VE, the ALJ must pose hypothetical questions to the VE that "set out all of the claimant's impairments" for the VE's consideration. *Tackett*, 180 F.3d at 1101 (citation and internal quotation marks omitted). "The ALJ's depiction of the claimant's disability must be accurate, detailed, and supported by the medical record." *Id.*

Here, because the ALJ did not properly evaluate the medical evidence, it is likely that the VE did not have all of Plaintiff's impairments before him when rendering an opinion as to whether Plaintiff can perform other types of work that exist in significant numbers in the national economy. Accordingly, on remand, the ALJ will reevaluate the medical evidence and call a new VE to review a hypothetical that includes *all* of Plaintiff's impairments, in accordance with the standards above. Specifically, the ALJ's depiction of Plaintiff's disability to the VE "must be accurate, detailed, and supported by the medical record." *Tackett*, 180 F.3d at 1101. If necessary, the ALJ is directed to elicit a reasonable explanation for any conflicts between the VE's testimony and the occupational information provided by the Dictionary of Occupational Titles. *See Massachi v. Astrue*, 486 F.3d 1149, 1152-54 (9th Cir. 2007); SSR 00-4p, 2000 WL 1898704, at *2-4.

D. The ALJ Erred in Her Evaluation of Plaintiff's Testimony.

A determination of whether to accept a claimant's subjective symptom testimony requires a two-step analysis. 20 C.F.R. §§ 404.1529, 416.929; *Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996); SSR 96-7p. First, the ALJ must determine whether there is a medically determinable impairment that reasonably could be expected to cause the claimant's symptoms. 20 C.F.R. §§ 404.1529(b), 416.929(b); *Smolen*, 80 F.3d at 1281-82; SSR 96-7p. Once a claimant produces medical evidence of an underlying impairment, the ALJ may not discredit the claimant's testimony as to the severity of symptoms solely because they are unsupported by objective medical evidence. *Bunnell v. Sullivan*, 947 F.2d 341, 343 (9th Cir. 1991) (en banc); *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1988). Absent affirmative evidence showing

that the claimant is malingering, the ALJ must provide "clear and convincing" reasons for rejecting the claimant's testimony. *Smolen*, 80 F.3d at 1284; *Reddick*, 157 F.3d at 722.

When evaluating a claimant's credibility, the ALJ must specifically identify what testimony is not credible and what evidence undermines the claimant's complaints; general findings are insufficient. *Smolen*, 80 F.3d at 1284; *Reddick*, 157 F.3d at 722. The ALJ may consider "ordinary techniques of credibility evaluation" including a reputation for truthfulness, inconsistencies in testimony or between testimony and conduct, daily activities, work record, and testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms of which he complains. *Smolen*, 80 F.3d at 1284; *see also Light v. Social Sec. Admin.*, 119 F.3d 789, 792 (9th Cir. 1997).

The ALJ found that Plaintiff's statements regarding the intensity, persistence and limiting effects of her symptoms are "not entirely credible." AR at 39. However, the ALJ failed to specifically identify what testimony of Plaintiff's is not credible and what evidence undermines Plaintiff's complaints. The ALJ only made the conclusory statement that the medical records "show that the claimant has some symptoms and limitations, but not to the point of disability. Other evidence supports that conclusion." AR at 40. On remand, the ALJ is directed to reassess Plaintiff's credibility after reevaluating the medical evidence in accordance with the hierarchy of medical evidence. To the extent the ALJ still finds Plaintiff's testimony not credible, the ALJ must specifically identify what testimony is not credible and what evidence undermines Plaintiff's complaints. Moreover, the ALJ must provide "clear and convincing" reasons for any adverse credibility assessment of Plaintiff's testimony.

Additionally, the Court notes that the "[o]ther evidence" relied upon by the ALJ in asserting that Plaintiff's symptoms and limitations do not reach the point of disability, AR at 40, does not meet the "clear and convincing" standard. To explain, the ALJ pointed out that Plaintiff no longer attends counseling and does not take medication for her impairments. AR at 40. However, Plaintiff testified that she does not have health benefits at her current part-time

job, and that she would like to take medication for her ADHD and depression, but cannot afford the medication. AR at 421, 430-31. This indicates that Plaintiff has not sought treatment for her impairments because of financial constraints, not because her "symptoms are not particularly bothersome," as found by the ALJ. *See* AR at 40.

Further, the ALJ noted that Plaintiff has worked approximately 20 hours per week in part-time jobs at fast food restaurants during the relevant period. AR at 40. Nonetheless, this evidence alone is insufficient to discredit Plaintiff's testimony regarding her symptoms and limitations. Plaintiff's relative ability to work a part-time job is consistent with her claim that she is disabled and cannot engage in substantial gainful activity, as such activity generally contemplates full time employment. *See* SSR 96-8p, 1996 WL 374184, at *2 ("Ordinarily, RFC is the individual's maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis . . . . A 'regular and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent work schedule."). In other words, a claimant will be considered disabled if she cannot work full-time, as Plaintiff contends in this matter. *See Rollins v. Massanari*, 261 F.3d 853, 859 (9th Cir. 2001) ("An ability to keep to an 8-hour a day, 5-day a week schedule without accumulating too many absences is a pre-requisite for many jobs.").

There is also evidence in the medical record consistent with Plaintiff's claim that, despite being able to work a part-time schedule, her impairments preclude her from working full-time. Dr. Fitz, who examined Plaintiff at the request of the ALJ after the hearing, opined in his written report that Plaintiff's "potential . . . for having full time competitive employment appears to be markedly reduced due to her cognitive and emotional issues." AR at 394. Dr. Fitz also stated that Plaintiff "appears to be managing adequately working part time at her current job and this is possibly a realistic goal for her," and concluded that Plaintiff's "depression and anxiety also will make it difficult for her to increase her level of employment above the current [part-time] levels." *Id.* In sum, the ALJ erred in her evaluation of Plaintiff's

testimony regarding her symptoms and limitations, and on remand the ALJ is directed to provide "clear and convincing" reasons for any adverse credibility assessment of Plaintiff.

## IX. CONCLUSION

For the foregoing reasons, the Court recommends that this case be REVERSED and REMANDED for further proceedings. A proposed Order accompanies this Report and Recommendation.

DATED this 11th day of February, 2010.

*James P. Donohue*

_____
JAMES P. DONOHUE
United States Magistrate Judge

REPORT AND RECOMMENDATION
PAGE - 14